**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EMILY COULTER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 5:18-cv-01538-JLS |
| | : | |
| CHASE BANK USA, N.A., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    RELEVANT PROCEDURAL HISTORY ..................................................................... 3

III.   FACTUAL BACKGROUND ........................................................................................ 3

IV.   ARGUMENT ................................................................................................................ 5

     A.      Standard of Review ....................................................................................... 5

     B.      Chase Is Entitled To Judgment on Plaintiff's FCRA Claim ........................ 5

         1.      Chase did not furnish the "Date of Status" .................................... 6

         2.      Plaintiff's FCRA claim fails because the challenged information appeared on a consumer disclosure, which is not actionable under the FCRA ............................................................................. 10

         3.      Plaintiff's theory that Chase violated the FCRA by failing to mark the accounts "in dispute" fails as a matter of law. .................................... 11

             (a)      Whether Chase should have marked the Chase Accounts "in dispute" is a legal question that does not fall within the purview of the FCRA. .................................................. 12

             (b)      Marking the Chase Accounts "in dispute" deviates from well recognized industry standards. .............................. 15

         4.      Plaintiff has not suffered any damages. .................................. 16

         5.      Plaintiff lacks standing to assert her FCRA claim. ................... 18

         6.      Plaintiff Has Not And Cannot Demonstrate Any Entitlement To Punitive Damages. .................................................................. 20

V.    CONCLUSION ........................................................................................................... 22

**Page(s)**

**Cases**

*Allen v. Wright*,
    468 U.S. 737 (1984)....................................................................................................18

*Alston v. Wells Fargo Home Mortg.*,
    No. TDC-13-3147, 2016 WL 816733 (D. Md. Feb. 26, 2016)................................13

*Anthony v. Duff & Phelps Corp.*,
    No. 09-3918, 2010 WL 3222188 (E.D. Pa. Aug. 12, 2010) .....................................5

*Arianas v. LVNV Funding LLC*,
    132 F. Supp. 3d 1322 (M.D. Fla. 2015) ..................................................................14

*Baker v. McKinnon*,
    152 F.3d 1007 (8th Cir. 1998) ................................................................................20

*Braitberg v. Charter Commc'ns, Inc.*,
    836 F.3d 925 (8th Cir. 2016) ..................................................................................19

*Caseman v. Silver State Schs. Credit Union*,
    No. 2:17-cv-00140, 2018 U.S. LEXIS 2018 (D. Nev. July 30, 2018)..................8, 9

*Chiang v. Verizon New England, Inc.*,
    595 F.3d 26 (1st Cir. 2010)......................................................................................14

*Cortez v. Trans Union, LLC*,
    617 F.3d 688 (3d Cir. 2010)......................................................................................5

*DeAndrade v. Trans Union LLC*,
    523 F.3d 61 (1st Cir. 2008)......................................................................................13

*Dolmage v. Combined Ins. Co. of Am.*,
    No. 14 C 3809, 2015 U.S. Dist. LEXIS 6824 (N.D. Ill., Jan. 21, 2015) ..................6

*Fikes v. ARS Account Resolutions*,
    No. 4:18-CV-220, 2019 U.S. Dist. LEXIS 43814 (E.D. Tex. Feb. 14, 2019))......11

*Frederick v. Capital One Bank (USA), N.A.*,
    No. 14-CV-5460 (AJN), 2018 U.S. Dist. LEXIS 50768 (S.D.N.Y. Mar. 27,
    2018) ........................................................................................................................21

*Horsch v. Wells Fargo Home Mortg.*,
    94 F.Supp.3d 665 (E.D. Pa. 2015) ...........................................................................6

*Hrebal v. Seterus, Inc.*,
    598 B.R. 252 (D. Minn. 2019) ............................................................4

*Jackling v. HSBC Bank USA, N.A.*,
    No. 15-CV-6148-2019 U.S. Dist. LEXIS 4889 (W.D.N.Y. Jan. 10, 2019)............................21

*Jenkins v. AmeriCredit Fin. Servs.*,
    No. 14-cv-5687, 2017 U.S. Dist. LEXI 57560 (E.D.N.Y. Feb. 14, 2017)............................20

*Kamal v. J. Crew Group, Inc.*,
    918 F.3d 102, 112-13 (3d Cir. 2019) .....................................................19

*Kelly v. SunTrust Bank*,
    No. 3:14-cv-121, 2016 U.S. Dist. LEXIS 23451 (E.D. Va. Feb. 25, 2016) ...........................12

*Kibbie v. BP/ Citibank*,
    No. 3:CV-08-1804, 2009 U.S. Dist. LEXIS 81806 (M.D. Pa., Sept. 9, 2009)........................6

*Long v. Se. Pa. Transp. Auth.*,
    903 F.3d 312 (3d Cir. 2018)..............................................................18

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).....................................................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).....................................................................5

*Murphy v. Ocwen Loan Servicing, LLC*,
    No. 13-cv-00555, 2014 WL 651914 (E.D. Cal. Feb. 19, 2014) .............................13

*Pozzuolo v. Portfolio Recovery Assocs., LLC*,
    No. 18-1797, 2019 U.S. Dist. LEXIS 60680 (E.D. Pa. Apr. 9, 2019).....................20

*Pundt v. Select Portfolio Servicing, Inc.*,
    No. 10-cv-159, 2012 WL 2312074 (N.D. Iowa June 18, 2012) .............................13

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011)..............................................................19

*Rindfleisch v. Cal. Coast Credit Union*,
    No. 13-cv-1882, 2014 U.S. Dist. LEXIS 189673 (S.D. Cal. Sept. 15, 2014)...........................9

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)......................................................................20

*Sarko v. Penn-Del Directory Co.*,
    968 F.Supp. 1026 (E.D. Pa. 1997), *aff'd*, 189 F.3d 464 (3d Cir. 1999)....................................5

*Schoonejongen v. Curtiss-Wright Corp.*,
  143 F.3d 120 (3d Cir. 1998)...................................................................5

*Shannon v. Equifax Info. Servs., LLC*,
  764 F. Supp. 2d 714 (E.D. Pa. 2011) ...................................................21

*Shaw v. Experian Info. Sols. Inc.*,
  891 F.3d 749 (9th Cir. 2018) ...............................................................15

*Solt v. Alpo Petfoods, Inc.*,
  837 F. Supp. 681 (E.D. Pa. 1993), *aff'd*, 30 F.3d 1488 (3d Cir. 1994)....................................5

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)...........................................................18, 19, 20

*Strubel v. Comenity Bank. Robins v. Spokeo, Inc.*,
  867 F.3d 1108 (9th Cir. 2017) (*Spokeo II*)............................................19

*Tauro v. Capital One Fin. Corp.*,
  2016 U.S. Dist. LEXIS 177152 (W.D. Pa., Dec. 22, 2016), *aff'd. Tauro v. Capital One Fin. Corp.*, 2017 U.S. App. LEXIS 5377 (3d Cir. Pa., Mar. 28, 2017) .................................................................................................9

*Thomasian v. Wells Fargo Bank, N.A.*,
  No. 03:12-cv-01435-H, 2014 U.S. Dist. LEXIS 44165 (D. Or., Mar. 25, 2014) ...................12

*Walden v. Saint Gobain Corp.*,
  323 F. Supp. 2d 637 (E.D. Pa. 2004) .....................................................5

*Zahran v. Bank of Am.*,
  No. 15-C-1968, 2016 WL 826402 (N.D. Ill. Mar. 3, 2016) ...................13

**Statutes**

15 U.S.C. § 1681........................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 56(c) ................................................................5

Defendant Chase Bank USA, N.A., now known as JPMorgan Chase Bank, N.A. ("Chase"), by its undersigned counsel, respectfully submits its Memorandum of Law in Support of its Motion for Summary Judgment and avers as follows:

## I.    <u>INTRODUCTION</u>

Plaintiff Emily Coulter ("Plaintiff") raises a single claim against Chase under the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), alleging Chase furnished an inaccurate "Date of Status" for her Chase card accounts and failed to correct it. She also alleges that Chase failed to mark her accounts "in dispute" despite receiving notice of Plaintiff's dispute from Experian. Based thereon, Plaintiff claims Chase negligently and willfully violated the FCRA under Sections 1681n and 1681o.

Although Plaintiff's theories have been a moving target throughout this litigation, this is a straightforward FCRA case involving information which Chase indisputably does not furnish to credit reporting agencies — the "Date of Status." The record demonstrates that "Date of Status" is a unique Experian field which Chase, a data furnisher, has no control over and does not "furnish" – it is a date created entirely by Experian. This undisputed fact, alone, warrants summary judgment in favor of Chase. Regardless of the accuracy of the disputed information, the FCRA does not impose liability upon furnishers for information they themselves do not furnish.

There are additional grounds for granting summary judgment in favor of Chase. First, the challenged information – the "Date of Status" appears only on Plaintiff's consumer disclosure. In the complaint, Plaintiff improperly conflates a consumer disclosure with a credit report; the former is not actionable under the FCRA and only available to consumers. Second, the "Date of Status" for both Chase Accounts was indeed changed to April 2015, the date Plaintiff contends should have appeared, after Plaintiff submitted the subject dispute to Experian ("October 21,

2017 dispute).  As a result, Plaintiff is left with the allegation that Chase failed to mark the trade lines as "in dispute" upon receipt of the October 21, 2017 dispute (even though the "dispute" had been changed exactly as Plaintiffs claims it should have been, so no "dispute" existed any longer).  This claim fails for two reasons.  First, whether Chase should have marked the accounts "in dispute" raises a *legal* question and not a *factual* dispute.  The former does not fall within the purview of the FCRA.  Second, furnishers are instructed *not* to mark an account in "dispute" upon receipt of an indirect consumer dispute from a credit reporting agency ("CRA"), as was the case here.  This instruction comes from the industry-wide resource, known as the Credit Reporting Resource Guide ("CRRG").  Along with providing guidance regarding proper reporting, the CRRG contains a list of industry-specific codes, known as the "Metro 2," which furnishers follow to respond to a credit bureau dispute.  This guidance aligns with the FCRA, where the statute provides marking accounts as "in dispute" only for direct disputes (under Section 1681s-2(a)), but not indirect disputes (under Section 1681s-2(b)).

Lastly, Plaintiff has admitted that she has not suffered any cognizable damages as a result of Chase's alleged conduct.  The record demonstrates the same.  Without damages, at most, Plaintiff's claim rests on a finding of a bare procedural violation, which the Supreme Court has held is insufficient to invoke standing.  Despite not sustaining any actual damages, Plaintiff seeks an award of punitive damages based on an unsupported claim that Chase acted willfully.  There is absolutely no evidence in the record to support a willfulness finding, and, therefore, as a matter of law, Chase is entitled to summary judgment on Plaintiff's willfulness claim.

After the completion of discovery, there remains no genuine issues as to any material fact, and Plaintiff cannot prevail on her FCRA claim.  Chase is not liable to Plaintiff and is therefore entitled to judgment as a matter of law.

## II.     RELEVANT PROCEDURAL HISTORY

Plaintiff initiated this action against Chase and former defendants Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union") in the Court of Common Pleas of Lancaster County, Pennsylvania on March 8, 2018. *See* ECF No. 1 at ¶ 1. Chase removed the matter to the District Court for the Eastern District of Pennsylvania on April 12, 2018. *See* ECF No. 1. Plaintiff filed an Amended Complaint against Experian and Chase on June 29, 2018 (ECF No. 15), and after receiving leave, filed a Second Amended Complaint with Chase as the sole remaining defendant, on April 26, 2019 (ECF No. 78.). Factual discovery closed on April 30, 2019 (ECF No. 64), and expert discovery closed on June 17, 2019 (ECF No. 81). On June 17, 2019, Chase served its expert report on Plaintiff. Plaintiff deposed Chase's expert on September 16, 2019.

## III.     FACTUAL BACKGROUND

Plaintiff had two credit card accounts with Chase bearing account number 426684137180XXXX and 441712304702XXXX, respectively (the "Chase Accounts"). *See* Joint Stipulation of Material Facts ("JSMF") ¶ 1. On April 29, 2015, Plaintiff filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Pennsylvania. JSMF ¶ 2. Plaintiff identified the Chase Accounts as belonging to her in the schedules she filed in her bankruptcy proceeding. JSMF ¶ 3; *see also In re Coulter*. On September 3, 2015, Plaintiff received a discharge in her bankruptcy. JSMF ¶ 4.

Experian has a data field called "Date of Status" on its consumer disclosures.[1] JSMF ¶ 5. Plaintiff's July 24, 2017 Experian consumer disclosure showed "July 2017" as the "Date of

---

[1]     As Chase's expert, John Ulzheimer opined, consumer disclosures and credit reports are not the same. Consumer disclosures are designed for and only available to consumers. Credit reports are designed for and are only available to users of credit reports, like banks

(continued...)

Status" for the Chase Accounts. JSMF ¶ 6. On October 29, 2017, Chase received notice of a dispute concerning the Chase Accounts from Experian via an Automated Consumer Dispute Verifications form ("ACDVs").[2] JSMF ¶ 7. The ACDVs, like all ACDVs, does not contain a "Date of Status" field. JSMF ¶ 8. Chase reviewed the October 29, 2017 ACDV and provided a response to Experian by the November 8, 2017 response date. JSMF ¶ 9. Chase did not mark the Chase Accounts in dispute in response to its receipt of the October 29, 2017 ACDV. JSMF ¶ 10. The "Date of Status" for the Chase Accounts in Experian's October 30, 2017 "Results Summary" appeared as April 2015 and on subsequent Experian consumer. JSMF ¶ 11.

Plaintiff believes that her "rights were violated" when the reporting of alleged inaccurate information occurred and that she is "owed something." JSMF ¶ 12. Plaintiff testified that she did not know her credit score as of January 8, 2019, when she was deposed in this action, nor did she know on that date what her credit score was back in August of 2017. JSMF ¶ 13. And, since the alleged inaccurate "Date of Status" appeared on her Experian consumer disclosure credit report, Plaintiff has not been denied credit. JSMF ¶ 14. To the contrary, Plaintiff has since applied for and obtained credit from various lenders. JSMF ¶ 15

---

(...continued)

      and credit card issuers. *See* Exhibit G, Expert Report of John Ulzheimer ("Ulzheimer Report" at p. 16; *see also* Exhibit H, Deposition of John Ulzheimer ("Ulzheimer Dep.") at 107:13-25; 108:1-25.

[2]     An ACDV is an electronic means by which a CRA may report a consumer dispute to a "furnisher" of consumer data, like Chase. *See Hrebal v. Seterus, Inc.*, 598 B.R. 252, 259 at n.4 (D. Minn. 2019).

## IV.  ARGUMENT

### A.  Standard of Review

The "underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Anthony v. Duff & Phelps Corp.*, No. 09-3918, 2010 WL 3222188 at *1 (E.D. Pa. Aug. 12, 2010) (quoting *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004)).  Summary judgment must be granted when the pleadings, affidavits, and discovery materials produce no "genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party cannot escape summary judgment by introducing "a mere scintilla of evidence" in its favor, *Sarko v. Penn-Del Directory Co.*, 968 F.Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), *aff'd*, 189 F.3d 464 (3d Cir. 1999), or by relying on conclusory allegations, improbable inferences, or unsupported speculation, *Solt v. Alpo Petfoods, Inc.*, 837 F. Supp. 681, 686 (E.D. Pa. 1993), *aff'd*, 30 F.3d 1488 (3d Cir. 1994).  "[W]hen the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the moving party is entitled to summary judgment in its favor.  *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 129 (3d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### B.  Chase Is Entitled To Judgment on Plaintiff's FCRA Claim

The FCRA was created "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report."  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (citing S. Rep. No. 91-517, at 1 (1969)).  In furtherance of said goal, Section 1681s-2 of the FCRA imposes certain responsibilities upon persons who furnish information to credit reporting agencies.  A furnisher is defined as a person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer."  15 U.S.C. § 1681s-

2(a)(2). Subsection (a) imposes a general duty to report accurate information and to investigate disputes that consumers bring directly to the furnisher.[3] Subsection (b) imposes a duty to investigate and respond to consumers' disputes forwarded by CRAs to the furnishers about reported information. 15 U.S.C. § 1681s-2.

In order to state a claim under § 1681s-2(b), a plaintiff must demonstrate "(1) that he notified a CRA of the dispute under § 1681i, (2) that the CRA notified the party who furnished the information, and (3) that the party who furnished the information failed to investigate or rectify the disputed charge." *Horsch v. Wells Fargo Home Mortg.*, 94 F.Supp.3d 665, 672 (E.D. Pa. 2015).

### 1.    Chase did not furnish the "Date of Status"

The FCRA does not define the word "furnish," however, courts generally use the term to describe "the active transmission of information to a third-party. . ." *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2015 U.S. Dist. LEXIS 6824, at *8-9 (N.D. Ill., Jan. 21, 2015) (collecting cases). While Chase is a furnisher and did furnish *certain* information regarding the Chase Accounts to the CRAs, the undisputed record shows that Chase did not (and does not) furnish the "Date of Status." There is no "Date of Status" field in an ACDV. *See* JSMF ¶ 8. David Rivera, a Chase Operation Analyst, who assists in managing the direct dispute and the indirect dispute process for Chase, provided unequivocal and unrebutted testimony that Chase does not furnish a "Date of Status" to CRAs. Deposition of David Rivera at 73:12-14.

---

[3]     There is no private right of action under 1681s-2(a). *See Kibbie v. BP/ Citibank*, No. 3:CV-08-1804, 2009 U.S. Dist. LEXIS 81806, at *19-20 (M.D. Pa., Sept. 9, 2009) ("Plaintiff does not have a right to bring a private action pursuant to Section 1681s-2(a).") (collecting cases)).

It is well known in the credit industry that furnishers, like Chase, do not furnish a "Date of Status." As John Ulzheimer, Chase's credit expert explained:

> Metro 2 is the one and only credit reporting language used by credit reporting agencies and their data furnishes. In Metro 2, there is no such field or date as a so-called "Date of Status." Because there is no such "Date of Status," furnishers like Chase cannot report, update, delete, investigate, or modify a "Date of Status."

Exhibit G, Ulzheimer Report at pp. 12-14. A furnisher cannot update information it does not furnish in the first place.

Critically, the "Date of Status" field is unique to Experian. *Id*. at p. 13. It does not appear on credit reports. *Id*. at pp. 12-14. It appears only on Experian's consumer disclosures, which are not available to the public, including prospective creditors. *Id*. Experian Senior Legal and Compliance Analyst Mary Methvin, explained in her declaration submitted in this case:

> Experian's consumer disclosures contain a field for tradelines called the "Date of Status." For accounts that are reporting as having been discharged through bankruptcy, the "Date of Status" field represents the date the account is being reported as having been discharged. For other derogatory statuses, the "Date of Status" field indicates the date that is being reported by the furnisher as the date the currently reported derogatory status first occurred. Because changes to accounts discharged in bankruptcy are possible, Experian continues to accept updates to such accounts from data furnishers. Accordingly, it is possible for the "Date of Status" for accounts reported as discharged through bankruptcy to change, if the previously reported or verified dates change.

Exhibit A to JSMF, Methvin Decl. at ¶ 7. The Methvin Decl. further establishes that Chase did not furnish the challenged information— the "Date of Status" —in Plaintiff's consumer disclosure. Rather, Experian supplied the "Date of Status" in question by interpreting *other* information Chase furnished to *another* CRA pertaining to the Chase Accounts. As Ms. Methvin testified:

Experian provided Plaintiff with a consumer credit disclosure on July 24, 2017. EXPERIAN_18-CV-1538_000109-000020. On that disclosure, the Date of Status for the Chase Accounts appeared as July 2017. This is because the CII Date for the Chase Accounts was reported as July 11, 2017 and July 12, 2017, respectively, as of that time. This was a result of information received by Experian from another CRA, which in turn had received the information from Chase pursuant to that CRA's receipt of a consumer dispute. In the responses that Chase sent to the other CRA, of which it sent carbon copies to Experian, it reported a "Balance Date" in July 2017 for each of the Chase Accounts

Exhibit A to JSMF, Methvin Decl. at ¶ 9. Experian testified that <u>it</u> "updated" the Chase Accounts "pursuant to receipt of the carbon copies" of information received by Experian from another CRA. *Id*. at ¶¶ 9-10. Experian unilaterally changed the "Date of Status" based on its interpretation of the information Chase furnished to another CRA in a different field. *Id*. at ¶ 9 n.1. Chase cannot be held liable under the FCRA for Experian's unilateral actions. This principle is supported by a district court's rejection of a plaintiff's attempt to extend FCRA liability to a creditor where despite furnishing accurate information to one CRA in response to an ACDV, a second CRA unilaterally rejected the update because it did not comply with the second CRA's internal reporting system. *See Caseman v. Silver State Schs. Credit Union*, No. 2:17-cv-00140, 2018 U.S. LEXIS 2018 (D. Nev. July 30, 2018). In support of his decision granting summary judgment in favor of the furnisher-defendant, the Honorable Richard F. Boulware explained:

The [FCRA] does not require furnishers like Silver State to customize carbon copies or communications with CRAs, and there is no dispute that Silver State used industry-recognized Metro 2 codes to convey Plaintiff's updated account balance and status. Neither Plaintiff nor Trans Union contends that Trans Union did not understand Silver State's ACDV, or that it was somehow unintelligible – the document merely was not in compliance with Trans Union's own *internal* format. The Court thus finds as a matter of law based upon the undisputed facts that Silver State acted reasonably during its investigation and reporting regarding the Plaintiff's dispute.

> The Court declines to interpret the statute as suggested by Plaintiff to require that a furnisher would have an additional obligation to confirm and check that every single correction suggested by the furnisher was in fact corrected by the CRA. The Court does not find that Silver State had an obligation to understand in full the operation of a Trans Union internal reporting system, especially where Silver State sent information correcting inaccurate information in a clear format – which Trans Union understood but failed to incorporate.

*Id*. at *16-17. Just as the furnisher in *Caseman* was not held liable under 1681s-2(b) because it had no control over the CRA's internal systematic rejection of the furnisher's update to another CRA, Chase cannot, as a matter of law, be held liable for Experian's own internal processing in this case, which created a new field that Plaintiff now disputes.

In sum, both Chase and Experian have provided unrebutted testimony that Chase did not furnish the disputed information—the "Date of Status." For this reason judgment should be entered in favor of Chase. Plaintiff cannot establish the second and third elements of her 1681s-2(b) claim because Chase is not the "party who furnished the information." *See, e.g.*, *Tauro v. Capital One Fin. Corp.*, 2016 U.S. Dist. LEXIS 177152, at *12, 13 (W.D. Pa., Dec. 22, 2016) (holding that Section 1681s-2(b) applies only to entities that furnish information to CRAs and because neither defendant engaged in the challenged reporting, they were entitled to judgment as a matter law), *aff'd. Tauro v. Capital One Fin. Corp.*, 2017 U.S. App. LEXIS 5377 (3d Cir. Pa., Mar. 28, 2017); *Rindfleisch v. Cal. Coast Credit Union*, No. 13-cv-1882, 2014 U.S. Dist. LEXIS 189673, at *6 (S.D. Cal. Sept. 15, 2014) ("Absent any evidence that CCCU furnished information to the CRAs, it cannot be held liable under the FCRA for failing to correct that information. Accordingly, the Court grants CCCU's motion for summary judgment on Plaintiffs' FCRA claim.").

Accordingly, summary judgment should be granted in favor of Chase because the record unequivocally demonstrates that Chase did not furnish the "Date of Status."

**2.** **Plaintiff's FCRA claim fails because the challenged information appeared on a consumer disclosure, which is not actionable under the FCRA**

Plaintiff's FCRA claim is based solely on information on a consumer disclosure and not a credit report and the FCRA only governs information reported on the latter. It is undisputed that the Experian "Date of Status" only appears on Plaintiff's consumer disclosure. *See* Plaintiff's Consumer Disclosure. It does not appear on Plaintiff's credit report, which is the only report accessible to third parties. As, Chase's expert, John Ulzheimer, testified:

Q. What is a consumer disclosure report?

A. A consumer disclosure report is the type of credit report that is available only to consumers and not available to users of credit reports like banks and credit card issuers.

Q. So would a creditor or potential creditor who is potentially evaluating Ms. Coulter for credit, would that creditor be able to have access to this consumer disclosure report that's right in front of you?

A. Never.

\*\*\*

Q. Is it your understanding that Ms. Coulter, the plaintiff in this case, her – the genesis of her complaint is about what appears in this column on the consumer disclosure report and date of status?

A. That's my understanding.

Q. Okay. And is date of status, is that visible or accessible to any creditor who is looking to potentially give credit?

A. No. There's no such thing as a date of status in Metro 2 or on a credit report used by a lender.

Exhibit H, Ulzheimer Dep., at pp. 107:23-25; 108:1-7; 109:9-18.

In the Complaint, Plaintiff improperly conflates and confuses two statutorily defined terms: credit reports and consumer disclosures. Plaintiff fails to distinguish between credit

reports, which are published to third parties (as defined in 15 U.S.C. § 1681a(d)), and consumer

disclosures (defined in 15 U.S.C. § 1681a(g)), which are issued directly to the consumer and do

not give rise to liability under the FCRA. The Experian "Date of Status" field appears only on

Plaintiff's Experian consumer disclosure. It does not appear on Plaintiff's credit report as

defined in 15 U.S.C. § 1681a(d). *See supra* at p. 10. This important distinction was explained

by the Court in *Fikes v. ARS Account Resolutions*:

> Plaintiffs describe obtaining "credit reports" throughout the
> Complaint. Under the FCRA, credit reports are only those
> documents regarding consumer creditworthiness which are
> provided to third-parties. See 15 U.S.C. 1681a(d). In the factual
> allegations, Plaintiffs use the term colloquially, appearing to refer
> to checking his or her own credit score and credit history. The
> action of a consumer checking their own credit score and credit
> history is considered a consumer's credit "file," which, if not
> accurate, is not actionable under the FCRA. See 15 U.S.C.
> 1681a(g), 1681e(b).

No. 4:18-CV-220, 2019 U.S. Dist. LEXIS 43814, at *2-3 (E.D. Tex. Feb. 14, 2019)).

Accordingly, Plaintiff's FCRA claim fails as a matter of law because it is premised solely

on a notation that appears only in her consumer disclosure.

### 3. Plaintiff's theory that Chase violated the FCRA by failing to mark the accounts "in dispute" fails as a matter of law.

As set forth above, the undisputed facts that Chase did not furnish the "Date of Status"

and that the "Date of Status" does not appear on Plaintiff's credit report, warrant summary

judgment in favor of Chase on all of Plaintiff's claims. The Court's inquiry can start and end

with these undisputed material facts.

Plaintiff's FCRA claims additionally fail for a separate reason. The record clearly shows

that the "Experian Date of Status" for both Chase Accounts was changed to April 2015 after

Plaintiff submitted the subject dispute to Experian on or about October 21, 2017. JSMF ¶ 11.

Plaintiff cannot and did not allege in her Second Amended Complaint that the incorrect "Date of

Status" remained after Plaintiff notified Experian of her dispute.[4] *See generally* Sec. Am. Compl. Therefore, Plaintiff's FCRA claim is reduced to her claim that Chase should have marked the trade lines for the Chase Accounts "in dispute" upon receipt and even after it performed its investigation of Plaintiff's October 27 dispute.

For the reasons set forth below, this claim fails as a matter of law.

**(a)**  **Whether Chase should have marked the Chase Accounts "in dispute" is a legal question that does not fall within the purview of the FCRA.**

Plaintiff has not alleged a factual dispute. In fact, Plaintiff petitioned the Court to amend her complaint for the second time after the completion of discovery and still provided no facts challenging Chase's investigation, the reasonableness of it, or whether the disputed information was incomplete or inaccurate. Rather, she disputes Chase's legal treatment of her tradelines – she makes the legal argument that Chase remained obligated under law to report her Chase Accounts as disputed simply because it received notice of Plaintiff's dispute. However, as the case law is clear, a legal dispute, such as the one at issue here, fails to give rise to an FCRA claim.

---

[4]  There is no FCRA liability for a furnisher who updates information after receipt of a dispute from a CRA. *See, e.g., Kelly v. SunTrust Bank,* No. 3:14-cv-121, 2016 U.S. Dist. LEXIS 23451, at *12 n.8 (E.D. Va. Feb. 25, 2016) ("As best as the Court can decipher, Kelly also complains that both SunTrust and the CRA Defendants retroactively modified his consumer report after he sent them dispute letters. Even if SunTrust and the CRA Defendants did update Kelly's account after he submitted a dispute letter, this does not violate the law."); *Thomasian v. Wells Fargo Bank, N.A.,* No. 03:12-cv-01435-H, 2014 U.S. Dist. LEXIS 44165, at *23-24 (D. Or., Mar. 25, 2014) ("As long as the furnisher makes a reasonable investigation upon receiving notice of the dispute, and then acts to correct or delete any information that is erroneous, the furnisher will have no liability under the FCRA, even if it has mis-reported the information for many years, as allegedly happened here.")

Courts regularly dismiss or enter judgment on FCRA claims premised on legal, as opposed to factual, disputes. *See*, *e.g.*, *Zahran v. Bank of Am.*, No. 15-C-1968, 2016 WL 826402, at *5 (N.D. Ill. Mar. 3, 2016) ("Plaintiffs' dispute is essentially over how their lenders have characterized certain debts…, not whether, for example, [one of the plaintiffs] was actually involved in incurring the debts that appeared on his credit report."); *Alston v. Wells Fargo Home Mortg.*, No. TDC-13-3147, 2016 WL 816733, at *10 (D. Md. Feb. 26, 2016) (granting furnisher summary judgment where its challenged "determination…is not a factual question, but a legal one"); *Murphy v. Ocwen Loan Servicing, LLC*, No. 13-cv-00555, 2014 WL 651914, at *7 (E.D. Cal. Feb. 19, 2014) (dismissing FCRA claim where plaintiffs did "not identify a factual disagreement about the status of their debt," but rather made "the legal conclusion that their debt no longer exists and furnishers cannot provide [credit reporting agencies] information about it"); *Pundt v. Select Portfolio Servicing, Inc.*, No. 10-cv-159, 2012 WL 2312074, at *2 (N.D. Iowa June 18, 2012) ("While plaintiff's claim as to whether or how past delinquencies should be reported might raise a disputed legal question," he had failed to "come forward with a disputed issue of material fact as to the reasonableness of defendant's investigation into a claimed factual inaccuracy, which is his burden under the FCRA.").

This rule is consistent with the structure and rationale behind FCRA investigation claims. As courts have explained, an FCRA investigation claim includes a causation requirement: A consumer must prove an actual inaccuracy that could have been discovered and corrected in the course of a reasonable investigation. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) ("To determine whether a consumer has identified a factual inaccuracy on his or her credit report that would activate §1681i's reinvestigation requirement, '[t]he decisive inquiry' is whether the defendant credit bureau could have uncovered the inaccuracy 'if it had reasonably

investigated the matter.'" (alteration in original); *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1326-27 (M.D. Fla. 2015) ("It is the plaintiff's burden to show that the investigation was not reasonable, and that there was a causal relationship between the unreasonable investigation and the failure to discover inaccuracies in the plaintiff's account."). When a consumer lodges a factual dispute with the credit reporting agency, a furnisher's reasonable investigation could plausibly lead to a change in the reporting: For example, the furnisher could discover that it had miscalculated the balance. But when a consumer raises a legal dispute, no quantum or quality of investigation will change the outcome because, as noted above, "furnishers are 'neither qualified nor obligated to resolve' matters that 'turn[] on questions that can only be resolved by a court of law.'" *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010).

To that end, whether Chase had an obligation under the FCRA to report an account as disputed after performing an investigation of the dispute, is a legal question that falls outside of the parameters of the FCRA.[5] As courts have routinely recognized, the purpose of the FCRA dispute provision is to provide consumers with a mechanism to resolve *factual* disputes with furnishers – to ensure, for example, that creditors are not furnishing an account that does not belong to the consumer, or that they are furnishing the correct balance. *See, e.g.*, *Chiang*, 595 F.3d at 38. ("[A] plaintiff's required showing [under the FCRA] is *factual* inaccuracy, rather than the existence of disputed legal questions.") That obligation does not, however, extend to legal disputes, because "furnishers are 'neither qualified nor obligated to resolve' matters that 'turn[] on questions that can only be resolved by a court of law.'" *Id.* (alteration in original).

---

[5] Section 1681s-2(a), not s-2(b), provides for marking an account "in dispute", but does not provide for a private right of action.

For the foregoing reasons, Plaintiff's FCRA claim fails as a matter of law because it concerns a legal dispute.

**(b)** **Marking the Chase Accounts "in dispute" deviates from well recognized industry standards.**

"Furnishers generally report their data to CRAs using an agreed-upon format, known as Metro 2. Furnishers' Metro 2 reporting requirements are specified in the Credit Reporting Resource Guide ("CRRG"), which is published by the Consumer Data Industry Association (CDIA), a CRA trade association." *Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 752 (9th Cir. 2018). Metro 2 explicitly instructs furnishers, such as Chase, <u>not</u> to report a dispute code in response to a consumer dispute investigation request from a CRA, as was the case here. *See* CREDIT REPORTING RESOURCE GUIDE®, Consumer Data Industry Association at Exhibit 8, 5-31 ("The Compliance Condition Codes should not be reported in response to a consumer dispute investigation request from the reporting agencies . . .").[6] As the seminal guide endorsed by the credit industry instructs furnishers <u>not</u> to report an account in dispute upon the receipt of a dispute from a CRA, Chase cannot be found to have violated the FCRA for allegedly not reporting the Chase Accounts in dispute. As John Ulzheimer, Chase's credit expert explained:

> In early 2017 the Consumer Data Industry Association ("CDIA") made it known that they would be sending an off-cycle update to their credit reporting industry standards in mid 2017, and in advance of the publication of their full 2017 Credit Reporting Resource Guide ("CRRG"). This off-cycle update would direct furnishers of credit information to the credit bureaus, like Chase, to **not** report Compliance Condition Codes, what Plaintiff refers to as "in dispute" in her Second Amended Complaint, when they receive indirect disputes from a credit reporting agency.

---

[6]     True and correct copies of the relevant portions of the Metro 2 are attached hereto as Exhibit I. Exhibit I contains proprietary information and, is, therefore being filed under seal.

Exhibit G, Ulzheimer Expert Report at pp. 14-15.

A finding that Chase violated the FCRA by not marling the Chase Accounts as "in dispute" would completely undermine the credit industry's well recognized and accepted procedures. In this aspect, not marking an account "in dispute" matches the FCRA's statutory framework. The credit industry's guidance on this topic should be upheld.

### 4. Plaintiff has not suffered any damages.

For the reasons set forth above, to the extent Plaintiff suffered any damages, Chase did not cause them. Chase did not furnish the "Date of Status"; Experian did.

The record is clear, however, that Plaintiff has not suffered any harm. Sec. Am. Compl.¶ 24. In her deposition, Plaintiff conceded she has not suffered any actual damages. Even without this admission, the record establishes that Plaintiff cannot demonstrate—as a matter of law—that she suffered damages as a result of Chase's conduct. Plaintiff has presented no evidence of what her credit score was during the relevant time period.[7] JSMF ¶ 13. Instead, Plaintiff testified that she does not know what her credit score was during this timeframe. JSMF ¶ 13. Plaintiff admitted that she did not check whether her credit score was lowered after her Experian consumer disclosure identified the alleged inaccurate "Date of Status" for her Chase Accounts. See Exhibit J, Coulter Dep at pp. Coulter Dep. 148:24-149:19. And, since the alleged inaccurate "Date of Status" appeared on her Experian consumer disclosure credit report, Plaintiff has not applied for and been denied credit. JSMF ¶ 14. To the contrary, Plaintiff has since applied for and obtained credit from various institutions. JSMF ¶ 15. Plaintiff's own testimony

---

[7]    In response to Chase's Interrogatories seeking her credit score during the relevant timeframe, Plaintiff objected to the relevancy of such information and refused to provide it. True and correct copies of the relevant portions of Plaintiff's Interrogatory Responses are attached hereto as Exhibit K. As such, Plaintiff should be precluded from offering any testimony regarding her credit score.

belies her claim that she suffered any economic damages as a result of the "Date of Status" reporting.

Moreover, as a matter of law, Plaintiff's credit score or ability to obtain credit was not impacted by the "Date of Status" because there is no "Date of Status" on a credit report. Exhibit G, Ulzheimer Report at p. 15. Instead, the "Date of Status" only appears on Plaintiff's consumer disclosure, which is not available to creditors. *Id*. Therefore, the "Date of Status" is not factored into a creditor's decision to grant or deny credit. *Id*.

Importantly, Plaintiff herself was incapable of articulating what her damages are:

Q.   What are you looking for Chase from this lawsuit?

A.   Damages.

Q.   And what are your damages?

A.   My damages would be that there was incorrect information on my credit report.

Q.   Are you able to monetize those damages?

A.   I don't know.

Q.   Are you able to tell me today what figure represents your damages, what monetary figure represents your damages?

A.   No. I personally can't tell you that.

Q.   Can you tell me how you were damaged?

A.   My rights were violated. Dates were changed on my credit report that were inaccurate.

Q.   And can you tell me if the date of status as you allege being inaccurate, did that lead to – did that lead to you being damaged?

A.   My rights were violated.

Q.   Did you have any other type of damages? Can you point to a number and say Chase is responsible for X because of this?

|   |   |
|---|---|
| A. | No. |
| Q. | Are you aware that your counsel, not Mr. Zemel, but Mr. Linker, represented to the Court that you don't have actual damages in this lawsuit? |
| A. | No. |
| Q. | Do you know the difference between actual damages and statutory damages? |
| A. | No. |
| Q. | If you were sitting right now before the judge and the judge asked you, what are your actual damages, could you quantify that for me, what would you say? |
| A. | I would say I don't know. |

Exhibit J, Coulter Dep. at 58:6-24; 59:1-24; 60:1-4.

### 5. Plaintiff lacks standing to assert her FCRA claim.

Plaintiff's testimony reveals that she lacks standing to even assert her FCRA claim because she has not suffered an injury-in-fact. To establish standing, a plaintiff must show that she (1) suffered an injury-in-fact or "an invasion of a legally protected interest," (2) that is fairly traceable to the defendant's conduct, and (3) is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-50, (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992)); *see also Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 322-23 (3d Cir. 2018). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (additional quotations and citations omitted). Addressing the "concrete" injury requirement, the *Spokeo* court explained that a concrete injury is "de facto," "real, and not abstract." *Spokeo*, 136 S. Ct. at 1548. In *Spokeo*, the Supreme Court provided two examples of procedural violations under FCRA that would not rise to the level of concrete harm. First, a consumer would suffer no concrete harm

18

where a CRA provided accurate information about a consumer but failed to provide the required notice to the user of the information. *Spokeo*, 136 S. Ct. at 1550. Second, the provision of an incorrect zip code, without more, would not likely constitute a concrete harm, even though in passing the FCRA, "Congress plainly sought to curb the dissemination of false information" about consumers. *Id*.

On remand to determine whether the procedural violation alone established concrete harm, the Ninth Circuit adopted the two-part test set forth by the Second Circuit in *Strubel v. Comenity Bank. Robins v. Spokeo, Inc*., 867 F.3d 1108, 1113 (9th Cir. 2017) (*Spokeo II*) (citing *Strubel*, 842 F.3d 181, 190 (2d Cir. 2016)). In applying that test, the court asks: "(1) whether the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.; See also Strubel*, 842 F.3d at 190 (citing *Spokeo*, 136 S. Ct. at 1549).

The Third Circuit made clear, in *Kamal v. J. Crew Group, Inc*., that it applies the *Strubel/Spokeo* II test: "We—like several of our sister circuits—understand Spokeo 'to instruct that an alleged procedural violation . . . manifest[s] concrete injury' if the violation actually harms or presents a material risk of harm to the underlying concrete interest." 918 F.3d 102, 112-13 (3d Cir. 2019) (quoting *Strubel*, 842 F.3d at 190; citing *Spokeo II*, 867 F.3d at 1115; *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016)) (additional citations omitted). This test requires the plaintiff to "'clearly and specifically set forth facts' showing a risk of harm particular to" him. *Kamal*, 918 F.3d at 116 (quoting *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011)) (additional citation omitted).

Therefore, pursuant to well settled precedent, even if the Court were to hold that Chase violated the FCRA, Plaintiff lacks standing to assert her claim because she cannot show actual harm or a material risk of harm. *See, e.g.*, *Pozzuolo v. Portfolio Recovery Assocs., LLC*, No. 18-1797, 2019 U.S. Dist. LEXIS 60680, at *11 (E.D. Pa. Apr. 9, 2019) ("Even though there was a violation of § 1692g, Pozzuolo cannot show actual harm or a material risk of harm. By his own admission, he was not 'hurt as a result of receiving this letter.'"). For this reason, Plaintiff's alleged FCRA claim is akin to the *Spokeo* court's example of a wrong zip code. Plaintiff has not, and cannot, show how the alleged inaccurate "Date of Status," that appeared only on her Experian consumer disclosure, or how the failure to mark the Chase Accounts in dispute after Chase completed its investigation, caused any actual harm or a material risk of harm to her.

Accordingly, Plaintiff lacks standing to assert her FCRA claim because, at most, it amounts to a bare procedural violation.

### 6. Plaintiff Has Not And Cannot Demonstrate Any Entitlement To Punitive Damages.

Finally, nothing in this record supports a finding of willfulness. "To establish a willful violation of the FCRA, plaintiff must show that a defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive.'" *Jenkins v. AmeriCredit Fin. Servs.*, No. 14-cv-5687, 2017 U.S. Dist. LEXI 57560 at *23 (E.D.N.Y. Feb. 14, 2017) (quoting *Baker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998)). Willfulness can also be established by evidence of actions that involve "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007). There is no willful violation of the FCRA if, at the time of the defendant's actions, his conduct could reasonably have been thought lawful; the defendant's subjective intent is irrelevant. *Id.* at 70, n.20.

For the same reasons that Plaintiff failed to demonstrate that Chase negligently violated the FCRA, Plaintiff also failed to establish that Chase acted willfully. As discussed above, the record demonstrates that Chase did not furnish the "Date of Status." The record further demonstrates that Chase performed a reasonable investigation of Plaintiff's October 2017 dispute. Upon performing a reasonable investigation, Chase had no duty to mark the Chase Accounts "in dispute" solely on the basis of its receipt of the dispute. *See Shannon v. Equifax Info. Servs., LLC*, 764 F. Supp. 2d 714, 7254 (E.D. Pa. 2011) (granting summary judgment to defendant where "Plaintiff has furnished no evidence that Defendant knowingly or intentionally disregarded his rights or violated the FCRA. Furthermore, Defendant's procedures and actions were not in reckless disregard of the FCRA."); *Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148-2019 U.S. Dist. LEXIS 4889, at *26-27 (W.D.N.Y. Jan. 10, 2019) (granting summary judgment in favor of defendant on willfulness claim where the complaint did not allege any additional facts beyond those contained in the negligence claims and the evidence showed that defendant responded to plaintiff's communications throughout the years and ultimately corrected its reporting); *Frederick v. Capital One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2018 U.S. Dist. LEXIS 50768, at *6-7 (S.D.N.Y. Mar. 27, 2018) ("Nonetheless, even assuming that each Defendant violated the FCRA, Plaintiff fails to provide evidence beyond his own hyperbole that any Defendant intentionally failed to correct information it knew to be false.")

Failing to provide evidence of willfulness, or actual damages related to Chase's alleged FCRA violation, Plaintiff's claim necessarily fails, and Chase's motion for summary judgment should be granted.

## V.    <u>CONCLUSION</u>

This matter is ripe for summary judgment, as the record plainly demonstrates that Plaintiff is unable satisfy the requisite elements of an FCRA claim, and there remain no genuine issues as to any of the material facts.

For the foregoing reasons, Chase respectfully requests that this Court enter judgment in its favor as to all claims asserted in Plaintiff's Second Amended Complaint.

Respectfully submitted,

Dated: October 18, 2019

*/s/  Jenny N. Perkins*
Beth Moskow-Schnoll, Esquire
moskowb@ballardspahr.com
Jenny N. Perkins, Esquire
perkinsj@ballardspahr.com
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone:  215.665.8500
Facsimile:  215.864.8999

*Attorneys for Defendant,*
*Chase Bank USA, N.A., now known as JPMorgan*
*Chase Bank, N.A.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, a true and correct copy of the foregoing

Motion for Summary Judgment, Memorandum of Law in Support, and Proposed Order were

served on the following via electronic service through the Electronic Case Filing System for the

Eastern District of Pennsylvania:

Daniel Zemel, Esquire
Nicholas J. Linker, Esquire
Zemel Law LLC
1373 Broad Street
Suite 203-C
Clifton, NJ 07013

*Counsel for Plaintiff*

Dated: October 18, 2019

*/s/ Jenny N. Perkins*
Jenny N. Perkins