IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EMILY COULTER,

Plaintiff,

v.

CHASE BANK USA, N.A.,

Defendant.

CIVIL ACTION
No. 18-1538

**MEMORANDUM**

**SCHMEHL, J.** /s/ JLS                    **SEPTEMBER 30, 2020**

This matter arises out of disputes over the accuracy of Plaintiff Emily Coulter's credit report.  (*See* ECF No. 78.)  Coulter alleges that she owed two credit card debts due to Defendant Chase Bank USA, N.A. ("Chase").  (*Id.*, ¶ 11.)  Chase then unsuccessfully attempted to collect these debts, later indicating that the debts were uncollectible, and thus charged off.  (*Id.*, ¶¶ 10-15.)  Plaintiff alleges that, in doing so, Chase inaccurately reported to CRAs the date on which her debts became uncollectible.  (*Id.*)  Plaintiff disputed the date that Chase reported, and Chase declined to alter it.  (*Id.*, ¶ 15.)  As a result, Plaintiff has brought one count against Defendant, alleging a violation of the Fair Credit Reporting Act ("FCRA").  (*Id.*, ¶¶ 16-25.)

As part of this count, Plaintiff alleges that Defendant Chase:

(1) Willfully and negligently supplied Experian with information about Plaintiff that was false, misleading, and inaccurate;
(2) Willfully and negligently failed to conduct an investigation of the inaccurate information that Plaintiff disputed, and continued to report dates that were inaccurate;
(3) Willfully and negligently failed to report the results of its investigation to the relevant consumer reporting agencies;

1

    (4)  Willfully and negligently failed to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all credit reporting agencies, concerning the inaccurate information disputed by Plaintiff;

    (5)  Willfully and negligently continued to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to credit reporting agencies; and

    (6)  Willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

    (*Id*., ¶¶ 18-23.)

Plaintiff further contends that Defendant's conduct, action, and inaction was willful, rendering it liable for actual and statutory damages, as well as punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  (*Id.,* ¶ 24.)  In the alternative, Plaintiff asserts that Defendant was negligent, and thus that Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1681o.  (*Id.*)

Now before the Court are the respective Motions for Summary Judgment of Plaintiff Emily Coulter and Defendant Chase Bank USA N.A.  (*See* ECF Nos. 84, 86.)  In her Motion, Plaintiff has moved for summary judgment only on her claim for an FCRA violation under 15 U.S.C. § 1681s-2(b).  (ECF No. 84 at 4-5.)  As detailed below, we deny Plaintiff's Motion as the reasonableness of Defendant's investigation here is a factual inquiry that we reserve for the jury.

Defendant, meanwhile, has also moved for summary judgment.  (*See* ECF No. 86.)  In support of its Motion, Defendant challenges the admissibility of Plaintiff's evidence while arguing that (1) Plaintiff suffered no damages; (2) Defendant did not furnish the disputed information; (3) information appearing on a consumer disclosure is not actionable under the FCRA; (4) whether Defendant should have marked the Chase Accounts as "in dispute" is a legal question outside the purview of the FCRA; (5) marking the Chase Accounts as "in dispute" would have contravened industry guidelines; and (6) Plaintiff is not entitled to punitive damages.  (*Id.*)  For the foregoing reasons, we also deny Defendant's motion for summary judgment.

I.     **RELEVANT FACTUAL BACKGROUND**[1]

This matter was removed to this Court from the Court of Common Pleas of Lancaster County on April 12, 2018.  (*See* ECF No. 1.)  Plaintiff later filed an Amended Complaint and a Second Amended Complaint (which is operative presently).  (*See* ECF Nos. 15, 78.)  In Plaintiff's Second Amended Complaint, she provides relevant context to the motions currently before the Court.  (*See* ECF No. 78.)

Plaintiff alleges that Defendant Chase is, for purposes of consumer credit reports, a furnisher.  (*Id.*, ¶ 5.)  Furnishers are one of two types of reporting entities, along with credit reporting agencies ("CRAs").  (*Id.*)  Furnishers provide information relating to their experiences with debtors to CRAs, who collect data and produce consumer credit reports.  (*Id.*)  The credit report activities of CRAs are regulated by the FCRA.  (*Id.*, ¶ 6.)  The FCRA's purpose is to ensure that CRAs follow the appropriate procedures to ensure that a consumer's credit report is accurate. (*Id.*, ¶ 7.)

Every credit report contains a number of lines representing a placeholder for a specific furnisher to report about a given debt or credit line incurred by a consumer.  (*Id.*, ¶ 8.)  These lines are known as "trade lines."  (*Id.*)  Trade lines consist of a number of fields that convey information to prospective creditors; they directly affect FICO credit scores.  (*Id.*, ¶ 9.)  One such field, labeled "Date of Status," represents the day a debt is deemed uncollectible and thus charged off.  (*Id.*, ¶ 10 (citation omitted).)  The Date of Status corresponds to a separate Status segment of the trade line.  (*Id.*)  The Status segment reveals further information about the trade line.  (*Id.*)  Plaintiff contends that the Date of Status should remain uniform throughout each credit report disclosing

---

[1] The operative pleading in this matter is Plaintiff's Second Amended Complaint.  (*See* ECF No. 78.)  As such, all facts contained within this section are sourced from this document as well as the appended Joint Stipulation of Material Facts.  (*See* ECF No. 86, Ex. 2.)

the trade line, "as this date does not change regardless of whether the original creditor sells the debt to a third party."  (*Id.*)

This case pertains to the Date of Status as it relates to two of Plaintiff's credit card accounts with Defendant.  (ECF No. 86, Ex. 2, ¶ 1.)  These accounts ("Chase Accounts") bore the account numbers 426684137180XXXX and 441712304702XXXX.  (*Id.*)  On April 29, 2015, Plaintiff filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Pennsylvania.  (*Id.*, ¶ 2.)  In her bankruptcy proceedings, Plaintiff identified these Chase Accounts as belonging to her.  (*Id.*, ¶ 3.)  On September 3, 2015, Plaintiff received a discharge in her bankruptcy.  (*Id.*, ¶ 4.)

Experian, a former defendant in this matter, has a data field labeled "Date of Status" on its consumer disclosures.  (*Id.*, ¶ 5.)  Plaintiff's July 24, 2017 Experian consumer disclosure report showed "July 2017" as the Date of Status for Plaintiff's Chase Accounts.  (*Id.*, ¶ 6.)  On October 29, 2017, Chase received notice of a dispute concerning the Chase Accounts from Experian via Automated Credit Dispute Verifications ("ACDVs").  (*Id.*, ¶ 7.)  The October 29, 2017 ACDV—like all ACDVs—did not contain a "Date of Status" field.  (*Id.*, ¶ 8.)  Chase reviewed this ACDV and provided a response to Experian by the required November 8, 2017 response date.  (*Id.*, ¶ 9.)  Chase did not mark Plaintiff's Chase Accounts as in dispute in response to its receipt of the October 27, 2019 ACDV.  (*Id.*, ¶ 10.)

In Experian's October 30, 2017 "Results Summary" for Plaintiff's Chase Accounts, the Date of Status appeared as April 2015; it also appeared that way on subsequent Experian consumer disclosures.  (*Id.*, ¶ 11.)  Plaintiff thus believes her "rights were violated" when the reporting of the alleged inaccurate information occurred, and she believes that she is "owed something."  (*Id.*, ¶ 12.)

Plaintiff has testified that—as of January 8, 2019, when she was deposed in this action—she did not know her credit score.  (*Id*., ¶ 13.)  Further, since the alleged inaccurate Date of Status appeared on her Experian consumer disclosure, Plaintiff has not applied for and been denied credit.  (*Id*., ¶ 14.)  Plaintiff has, however, since applied for and obtained credit from various institutions.  (*Id*., ¶ 15.)

## II.   STANDARD OF REVIEW

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In this analysis, all facts are viewed in the light most favorable to the non-moving party.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 903 (1990) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).  Therefore, it follows that for purposes of summary judgment, a dispute is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The substantive law governing a case determines which facts are material.  *Id.*  As such, factual disputes that are irrelevant or unnecessary will not be counted and only those disputes of fact that "might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id*.

Indeed, the Supreme Court has emphasized that:

"[t]he plain language of Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial; in such a situation, there can be no genuine issues as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial; the moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. . ."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 319 (1986).

## III.    ANALYSIS

### a.  Duties of Furnishers Under the Fair Credit Reporting Act ("FCRA")

The FRCA creates a regulatory framework that governs consumer credit reporting, placing a number of obligations on both credit reporting agencies ("CRAs") and furnishers of information. *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).  In this context, CRAs collect consumer credit data from furnishers—such as banks[2]—and organize the information into individualized credit reports, which are then used by commercial entities to assess a consumer's creditworthiness.  *Id*.  The FRCA thus "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."  *Id*. (citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

Section 1681s-2(a) of the FCRA provides the duties of furnishers relevant to the present Motion:

If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person

---

[2] The FCRA defines a "furnisher" as a person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer."  15 U.S.C. § 1681s-2(a)(2)(A).  A "person" in this context is an "individual, partnership, corporation, trust, estate, cooperative, association, government, or governmental subdivision or agency, or other entity."  15 U.S.C. § 1681a(b).  For purposes of this action, it is undisputed that Defendant Chase is a furnisher under the FCRA.

may not furnish the information to any consumer reporting agency without notice
that such information is disputed by the consumer.

15 U.S.C. § 1681s-2(a)(3).

This language notwithstanding, private enforcement of this obligation, and others, is not permitted

under Section 1681s-2(a).  *Seamans*, 744 F.3d at 866.  However, the Third Circuit has made clear

that "the fact that a furnisher is affirmatively obligated to flag an account as disputed under § 1681s-

2(a) does not undermine the conclusion that a failure to flag the account as disputed also constitutes a

material inaccuracy under § 1681s-2(b)."  *Id.* at 867.

Unlike Section 1618s-2(a), Section 1681s-2(b) provides a private cause of action against

furnishers when, after receiving notice of a consumer's "potentially meritorious dispute," the

furnisher subsequently fails to report that the claim is disputed.  *Id.*  Furnisher liability under

Section 1681s-2(b) is triggered after a specific set of communications between the consumer, the

CRA(s), and the furnisher(s) have occurred.  *Horton v. Trans Union, LLC*, No. 12-2072, 2015 U.S.

Dist. LEXIS 29564, at *22 (E.D. Pa. Mar. 9, 2015) (citing 15 U.S.C. § 1681s-2(b)(1), which

requires notice pursuant to § 1681i(a)(2)).   Specifically, "a consumer must first alert the [CRA]

that reported the allegedly erroneous information of a dispute.  It is then up to the [CRA] to inform

the furnisher of information that there has been a dispute, thereby triggering the furnisher's duty."

*Id.* (citing *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 35, 359 (3d Cir. 2011) (internal

quotations omitted)).  It is undisputed here that these initial communications occurred.  (ECF No.

86, Ex. 2 ¶ 7.)

After receiving appropriate notice from a CRA of such a dispute, Section 1681s-2(b)

provides that a furnisher must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency . . . ;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
      (i) modify that item of information;
      (ii) delete that item of information; or
      (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

### b. Plaintiff's Motion for Summary Judgment

Plaintiff has moved for summary judgment solely on its claim that Defendant violated the FCRA under 15 U.S.C. § 1681s-2(b).  (ECF No. 84 at 4-5.)  She claims that there is no genuine dispute as to any material fact related to Defendant's failure to mark her debts as disputed, and that she is thus entitled to judgment as a matter of law.  (ECF No. 84.)

To establish a violation of Section 1681s-2(b), "once a CRA [like Experian] notifies a credit furnisher (like Defendant) of a dispute, the furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information received from the CRA; (3) report the results of the investigation to the CRA; and (4) if the information is found to be inaccurate or incomplete, report the results to all CRAs to which it originally provided the erroneous information."  *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 604 (E.D. Pa. 2012) (citing 15 U.S.C. § 1681s-2(b)(1)).

Here, Plaintiff argues that (1) Defendant's failure to mark her accounts as "in dispute" was inaccurate; (2) Defendant's investigation was objectively unreasonable; and (3) that Defendant's

policy with regard to investigations is "willful as a matter of law."[3]  (ECF No. 84.)  We, however, cannot grant summary judgment in Plaintiff's favor as the reasonableness of Defendant's investigation is a factual inquiry reserved for the jury.

### i. Whether Defendant's Investigation Was Reasonable is a Factual Inquiry Reserved for the Jury

The Third Circuit has clarified that first duty of furnishers under Section 1681s-2(b)—to conduct an investigation into the disputed information—requires that the furnisher conduct a "reasonable" investigation.  *Seamans*, 744 F.3d at 864.  Although the FCRA does not define "reasonableness," precedent within this Circuit and others instructs us how to conduct such an analysis.  *Van Veen v. Equifax Info.*, 844 F. Supp. 599, 605 (E.D. Pa. 2012) (citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 36-37 (1st Cir. 2010); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004)).

This analysis requires weighing the competing interests of "the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information."  *Id*. (citing *Johnson*, 357 F.3d at 426).  The furnisher's investigation should be judged "in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Chiang*, 595 F.3d at 38.  Additionally, a furnisher's investigation may be considered reasonable, even when it fails to uncover the inaccurate information, if the notice to the furnisher of the dispute provides little relevant or helpful information.  *Van Veen*, 844 F. Supp. 2d at 605.

Perhaps most importantly, whether an investigation is reasonable is ordinarily a question for a jury; the Third Circuit has underscored that courts may decide "reasonableness" as a matter

---

[3] *See infra* § III(c)(vii).

of law only when "the reasonableness or unreasonableness of the procedures is beyond question." *Id*. at 864-65 (citing *Cortez*, 617 F.3d at 709).

In her Motion, Plaintiff argues that Defendant's investigation into her disputed date of status was objectively unreasonable.  (ECF No. 84 at 7.)  In so arguing, she emphasizes that "Defendant's failure to flag *any* account for which it receives a dispute from the CRAs as 'in dispute' is objectively unreasonable."  (*Id*. at 8 (emphasis added).)

Plaintiff cites this Court's decision in *Van Veen*, claiming that in that decision the Court "found that a jury could find that defendant recklessly disregarded Plaintiff's FCRA rights."  (*Id*.) This case, however, does not stand for the proposition for which Plaintiff offers it.  *See Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 608 (E.D. Pa. 2012).  First, the section of the *Van Veen* opinion to which Plaintiff cites concerns a claim for punitive damages, not a reasonableness analysis.  *Id*.  Second, the court in *Van Veen* denied a defendant's motion for summary judgment. *See id*.  It did not grant a plaintiff's motion for summary judgment or determine that a furnisher's investigation was unreasonable.  *Id*.  Indeed, to the extent that this Court in *Van Veen* discussed the reasonableness of a furnisher's investigation, it either found that the furnisher's investigation was reasonable or that such a determination should be left to a jury.  Third, the relevant portion of the opinion presents clear language in opposition to Plaintiff's argument for summary judgment. *Id*. ("Plaintiff presents no evidence to show why Defendant's investigation was unreasonable in light of the information Trans Union transmitted.  Rather, Plaintiff argues only that AT&T never conducts a meaningful investigation.")

Plaintiff also cites to this Court's decision in *Horton* for the proposition that Defendant's investigation was objectively unreasonable.  (EC No. 84 at 8.)  In *Horton*, this Court underscored that blanket policies may underpin a finding that a furnisher's actions were objectively

unreasonable. *Horton v. Trans Union, LLC*, No. 12-2072, 2015 U.S. Dist. LEXIS 29564, at *28 (E.D. Pa. Mar. 9, 2015) (citing *Seamans*, 744 F.3d at 868). However, it also explicitly stated that "whether [the furnisher's] actions were objectively unreasonable, rising to the degree of 'reckless disregard' for its obligations under the FCRA, is a question for a jury." *Id*. (citing 15 U.S.C.§ 1681n). Moreover, like *Van Veen*, *Horton* concerns a defendant-furnisher's motion for summary judgment, which was denied, and not a plaintiff's motion. *Id*.

Here, we do not find that the reasonableness or unreasonableness of Defendant's procedures is beyond question. Indeed, in Plaintiff's reply to Defendant's response to her motion, Plaintiff concedes this. (ECF No. 102 at 10 n.7 ("But Plaintiff concedes that these questions [of fact relevant to reasonableness] should be properly transmitted to a jury.").) Accordingly, we cannot properly decide this issue as a matter of law or grant summary judgment in Plaintiff's favor. This question will be reserved for the jury. Plaintiff's Motion is therefore denied.

### c.  Defendant's Motion for Summary Judgment

We now turn to our analysis of Defendant Chase's Motion for Summary Judgment. In its Motion, Defendant has argued that:

(1) Plaintiff lacks standing under the FCRA;
(2) Chase did not "furnish" the disputed Date of Status;
(3) Plaintiff's FCRA claim fails because the challenged information appeared only on a consumer disclosure, which is not actionable;
(4) Whether Chase should have marked Plaintiff's Chase Accounts as in dispute is a legal, not factual, question;
(5) Marking the Chase Accounts as "in dispute would contravene industry standards";
(6) Plaintiff has not suffered any damages; and
(7) Plaintiff has not demonstrated any entitlement to punitive damages.

(*See* ECF No. 86.)

Defendant has also challenged—and moved to strike pursuant to Federal Rule of Civil Procedure 56(c)(2)—two of Plaintiff's exhibits filed in opposition: (1) the deposition of Experian Compliance and Litigation Analyst Kimberly Cave and (2) the deposition testimony of Plaintiff's husband, Ramsey Coulter. (*See* ECF No. 101 at 3-4, 6-7.) As a preliminary step, we will first address Defendant's standing and evidentiary arguments. We will then assess Defendant's remaining arguments in turn.

### i. Plaintiff Has Standing to Assert Her FCRA Claim

In its Motion, Defendant argues that Plaintiff lacks standing under the FCRA, as she has not established that she suffered an injury-in-fact. (ECF No. 86 at 18.)

To meet the "irreducible constitutional minimum of standing . . . [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (internal quotations omitted). To show an injury in fact, "a plaintiff must show that . . . she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (citing *Lujan*, 504 U.S. at 560).

To be concrete, an injury must be "*de facto*; that is, it must actually exist." *Id*. at 1542 (internal quotations omitted). However, intangible injuries can be concrete. *Id*. at 1549. Moreover, an alleged procedural violation of a statute can alone "manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a risk of real harm to that concrete interest." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (citations and internal quotations omitted); *see also Kamal v.*

*J. Crew Grp.*, 918 F.3d 102, 113 (3d Cir. 2019).  Though general factual allegations of an injury resulting from the defendant's conduct may suffice to show standing, the complaint must still "clearly and specifically set forth facts sufficient to satisfy Article III."  *Kamal*, 918 F.3d at 109 (citations and internal quotations omitted).  To be particularized, an injury "must affect the plaintiff in a personal and individual way."  *Id.* at 1548.

We will limit our analysis here to the first requirement of standing—that plaintiff suffered an injury in fact—as Defendant does not present argument as to the second or third requirements. (*See* ECF No. 86 at 18-20.)  Principally, Defendant asserts that "Plaintiff lacks standing to assert her claim because she cannot show actual harm or a material risk of harm," further emphasizing its position that the alleged harm is a bare procedural violation of the FCRA.  (*Id.* at 20.)  In response, Plaintiff contends that she, as a result of Defendant's actions, suffered "actual injury to her credit report and accompanying distress."  (ECF No. 94 at 21.)  Specifically, Plaintiff alleges that she suffered an injury because (1) her credit score was lowered due to Defendant's inaccurate reporting; (2) she held back on applying for additional credit; and (3) she endured emotional harm. (*Id.* at 22.)

First, we find that Plaintiff's alleged injuries here are concrete.  It is well established that whether an allegation satisfies the concreteness requirement of the injury-in-fact does not depend on whether that allegation states plausible damages.  *Boone v. T-Mobile USA, Inc.*, No. 17-378, 2018 U.S. Dist. LEXIS 14951, at *20 (D.N.J. Jan. 29, 2018) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).  Even an alleged procedural violation can manifest a concrete injury if the violation actually harms or presents a material risk of harm to the underlying concrete interest.  *Kamal*, 918 F.3d at 112 (citations omitted).

Here, at the very least, Plaintiff has clearly and specifically set forth facts showing that her credit score was lowered as a result of Defendant's actions. Having a lower (and allegedly inaccurate) credit score can, and does, harm consumers. *See Adams v. Fifth Third Bank*, No. 16-218, 2017 U.S. Dist. LEXIS 18932, at *10-11 (W.D. Ky. Feb. 10, 2017) ("[a] low credit score may have tangible, real-world consequences, making it more difficult for Plaintiffs to obtain credit cards, auto loans, and mortgages . . ."). As such, the allegations here plainly rise to a level above the situations Defendant cites in comparison. (*See* ECF No. 86 at 18-19 (citing *Spokeo*, 136 S. Ct. at 1548 (stating that a consumer suffered no concrete harm (1) where a CRA provided accurate information but failed to notify the consumer of the information and (2) where a CRA provided an incorrect zip code without more)).) Second, we also find the Plaintiff's alleged injuries are particularized. Plaintiff alleges that her injuries impacted her credit score, her financial condition, and her emotional health. Each of these allegations is particular to Plaintiff as an individual, and Defendant does not contest this.

Moreover, many courts—including within this Circuit—have found that a lowered credit score constitutes an injury in fact for purposes of Article III standing. *Boone*, 2018 U.S. Dist. LEXIS 14951, at *20-22 ("[t]he alleged negative impact on Boone's credit score is also a concrete injury."); *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 698 (N.D. Ill. 2016) ("the Court agrees with Santangelo that a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing."); *Adams*, 2017 U.S. Dist. LEXIS 18932, at *10-11 ("Plaintiffs' allegations of lower credit scores . . . . are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."). Accordingly, we find that Plaintiff has standing to bring the present claims under the FCRA.

### ii.  Defendant's Motion to Strike is Denied

#### 1.  The Deposition of Experian Compliance and Litigation Analyst Kimberly Cave is Admissible for Summary Judgment Purposes

Defendant has moved to strike, pursuant to Federal Rule of Civil Procedure 56(c)(2), Exhibit A to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  (ECF No. 101 at 3.)  This exhibit contains the deposition of Kimberly Cave, an Experian Compliance and Litigation Analyst, from an unrelated matter.  (*Id*. at 1.)  Because of this, Defendant argues that it is inadmissible in the present matter because (1) the deposition is unauthenticated; (2) Defendant was not a party to the previous matter; and (3) Defendant had no opportunity to cross-examine Ms. Cave.  (*Id*.)  Plaintiff, however, contends that Ms. Cave's deposition transcript is admissible for summary judgment purposes.[4]  (ECF No. 110 at 2.)

Hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.  *FOP v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016).  In ruling on motion for summary judgment, we only need to determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial.  *Id*.  Indeed, the proponent of the hearsay evidence need only "explain the admissible form that is anticipated."  *Id*. (quoting FED. R. CIV. P. 56, Advisory Committee Note to 2010 Amendment).

"Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding."  *Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) (citation omitted).  "Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c) and may be used against a party

---

[4] Plaintiff additionally argues that Ms. Cave's deposition is admissible as a party-opponent statement exception to hearsay.  (ECF No. 94 at 3 n.1.)  Ms. Cave is an agent of Experian, a former defendant in this matter.  (*Id*.)  Once a party is severed from a case, it is no longer a party and its statements may not be admitted as party-opponent statements against remaining parties.  *See Kowalski v. Anova Food, LLC*, No. 11-795, 2015 U.S. Dist. LEXIS 34529, at *3 (D. Haw. Feb. 12, 2015) (citations omitted).  Thus, Ms. Cave's statements would not be admissible via this exception.

on summary judgment as long as the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence. *Id.* (citing FED. R. CIV. P. 56(c)(4)).

Since the testimony is to be treated like an affidavit in this context, it is not required that the opposing party have had an opportunity to cross-examine the affiant. *See Tingey v. Radionics*, 193 F. App'x 747, 765 (10th Cir. 2006). Additionally, filing such material as an exhibit to an opposition brief makes it part of the record for summary judgment purposes. *Burbank v. Davis*, 227 F. Supp. 2d 176, 178-79 (D. Me. 2002).

Considering this, for Ms. Cave's deposition to be admissible in the context of summary judgment, it must: (1) be based on personal knowledge; (2) set out facts that would be admissible in evidence; and (3) show that the affiant is competent to testify on the matters stated. FED. R. CIV. P. 56(c)(4). Defendant does not dispute that Ms. Cave's testimony is based on her personal knowledge and that she is competent to testify on the matters therein. (*See* ECF No. 101 at 3-4.)

Here, we find that Plaintiff has met her burden and has adequately "explain[ed] the admissible form that is anticipated" for this evidence at trial. *See FOP v. City of Camden*, 842 F.3d at 238 (citation omitted). Plaintiff has expressed that Ms. Cave's affidavit "was effectively a proffer of the testimony that [she herself] would give at trial." *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 102 (3d Cir. 1999). As such, we will treat it as evidence capable of being admitted at trial and will not strike it from the summary judgment record. *See id.*

### 2. The Deposition Testimony of Ramsey Coulter is Admissible for Summary Judgment Purposes

Defendant also argues that the deposition testimony of Ramsey Coulter, Plaintiff's husband, is inadmissible. (ECF No. 101 at 6-7.) It contends that Mr. Coulter "cannot opine on what impacted Plaintiff's Experian credit score [as] . . . . [s]uch opinions require expert testimony."

(*Id*. at 6.)  As Mr. Coulter has not been identified as an expert in this matter, Defendant claims that his deposition testimony constitutes inadmissible hearsay.  (*Id*. at 6-7, 9-10.)

Plaintiff, in response, states that Defendant mischaracterizes this evidence and that Mr. Coulter "properly testified to, and Plaintiff properly relied on, facts that he witnessed."  (ECF No. 110 at 5.)  Plaintiff maintains that "Mr. Coulter testified that upon viewing Plaintiff's credit reports and disclosures, he witnessed that Plaintiff's credit score had decreased and that there was inaccurate information being reported."  (*Id*.)

Hearsay evidence in summary judgment exhibits may be considered if the evidence could later be made admissible at trial.  *Perez v. Trans Union LLC*, 526 F. Supp. 2d 504, 511 n.5 (E.D. Pa. 2007) (citing FED. R. CIV. P. 56(e); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 227 n.5 (3d Cir. 2001)).  When a hearsay objection is made, the party submitting alleged hearsay evidence must respond to the objection by "demonstrating that the material would be admissible at trial under an exception to the hearsay rule, or that the material is not hearsay."  *Bouriez v. Carnegie Mellon Univ.*, No. 02-2104, 2005 U.S. Dist. LEXIS 18324, at *27 (W.D. Pa. Aug. 26, 2005) (citation omitted).

The mere possibility that a hearsay statement will be admissible at trial does not permit its consideration at summary judgment.  *Id*.  However, at the summary judgment stage, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial."  *Morgan-Hicks v. N.J. Dep't of Corrs.*, No. 17-655, 2020 U.S. Dist. LEXIS 73460, at *11 (D.N.J. Apr. 24, 2020) (citing *McMillian v. Wetzel*, 790 F. App'x 455, 459-60 (3d Cir. 2019)).  The nonmoving party need only "explain the admissible form that is anticipated."  *Id*. (citing FED. R. CIV. P. 56(c)(2), Advisory Committee Note).

Here, in response to Defendant's hearsay objections, Plaintiff presents the following arguments: (1) Mr. Coulter's testimony is not hearsay; (2) even if it were hearsay, it would be admissible as Plaintiff's credit scores, and the detrimental effect of the Date of Status, can be authenticated by the Experian witness; and (3) the statement can be taken as evidence of Mr. Coulter's and Plaintiff's then-existing state of mind (*i.e.*, believing that her credit score was damaged, Plaintiff refrained from applying for credit). (ECF No. 110 at 5.)

For purposes of her opposition to Defendant's Motion for Summary Judgment, Plaintiff has met her burden. She has explained that Mr. Coulter's deposition testimony as to Plaintiff's decreased Experian credit score (and the related inaccurately reported information) can be presented in the form of Experian witness testimony at trial. Thus, we deny Defendant's motion to strike Mr. Coulter's deposition from the summary judgment record.

### iii. There Remains a Genuine Dispute of Material Fact as to Whether Defendant Furnished Plaintiff's Allegedly Inaccurate Date of Status

We now proceed to Defendant's substantive arguments in favor of summary judgment. The FCRA does not define the term "furnish," but "courts generally use the term to describe the active transmission of information to a third-party." *Dolmage v. Combined Ins. Co. of Am.*, No. 14-3809, 2015 U.S. Dist. LEXIS 6824, at *8-9 (N.D. Ill. Jan. 21, 2015) (citations omitted). In its Motion, Defendant concedes that, under the FCRA, it is a furnisher and that it "did furnish *certain* information regarding the Chase Accounts to the CRAs." (ECF No 86 at 6.) However, Defendant argues that it is entitled to summary judgment as it did not furnish Plaintiff's Date of Status. (*Id*.)

Furnishers communicate to credit reporting agencies ("CRAs"), including Experian through an online network known as Metro 2. (ECF No. 94 at 2.) CRAs like Experian do not originate or create any credit information. (ECF No. 94 at 2.) It follows, thus, that all information

appearing on an Experian credit report or consumer disclosure is derived from a furnisher.  (*Id*.)
Through Metro 2, CRAs can send disputes to furnishers, to which furnishers can respond in an
Automated Consumer Dispute Verification ("ACDV").  (*Id*.)  ACDVs do not contain a "Date of
Status" field.  (ECF No. 86 at 6.)

Defendant asserts that "[i]t is well known in the credit industry that furnishers, like Chase,
do not furnish a 'Date of Status,'" and thus, that it cannot be held liable for any harm to Plaintiff
as a result of that date being incorrectly reported.  (ECF No. 86 at 7.)  It further suggests that
"Experian supplied the 'Date of Status' in question by interpreting *other* information Chase
furnished to *another* CRA pertaining to the Chase Accounts."  (*Id*.)  As such, it characterizes this
dispute as over "Experian's unilateral actions."  (*Id*. at 7.)

Plaintiff clarifies, in her response, how her Date of Status came to be reported as July 2017.
(ECF No. 94 at 4.)  Plaintiff contends that "the only reason the Date of Status was reflecting as
July 2017 is because Chase reported 'July 2017.'"  (*Id*.)  Defendant allegedly reported a "Balance
Date" on Plaintiff's Chase Accounts of July 2017.  (*Id*.)  According to the platform through which
Defendant furnishes information, e-Oscar, "'balance date' is listed as the 'Date of Account
Information.'"  (*Id*.)  The Date of Account Information ("DOAI"), in turn, is listed as the date "the
consumer's account information is in the status specified in the ACDV."  (*Id*. (internal quotations
omitted).)  Plaintiff clarifies, "[i]n simpler terms, the balance date of the DOAI should correspond
to the date the account reached the status it is currently in."  (*Id*.)  Thus, Plaintiff maintains that
"Chase reported the wrong DOAI date to Plaintiff's detriment, and Experian acted on this
furnishing of information."  (*Id*.)  Indeed, in its Motion, Defendant concedes that it originated the
information which led to Plaintiff's Date of Status reporting as July 2017.  (ECF No. 86 at 8 ("This

was a result of information received by Experian from another CRA, which in turn had received the information from Chase pursuant to that CRA's receipt of a consumer disclosure.").)

Defendant provides no legal authority that would permit this Court to grant summary judgment given these facts. Indeed, the primary cases upon which Defendant's argument rests are largely irrelevant to the present dispute. *See Cushamn v. Silver State Schs. Credit Union*, No. 17-140, 2018 U.S. Dist. LEXIS 126607 (D. Nev. July 30, 2018) (finding that a furnisher was not liable under the FCRA when its update to a CRA was rejected for not complying with that CRA's internal policies); *Tauro v. Capital One Fin. Corp.*, No. 15-1136, 2016 U.S. Dist. LEXIS 177152, at *12-13 (W.D. Pa. Dec, 22, 2016 (finding no FCRA liability where the entities sued were found not to be furnishers); *Rindfleisch v. Cal. Coast Credit Union*, No. 13-1882, 2014 U.S. Dist. LEXIS 189673, at *6 (S.D. Cal. Sept. 15, 2014) (finding a furnisher not liable under the FCRA where it was undisputed that the furnisher did not supply the relevant misinformation).

Defendant further contends that Plaintiff has conceded that it did not furnish Plaintiff's Date of Status. (ECF No. 101 at 3-4). This is plainly a selective, out of context, reading of Plaintiff's response to its Motion and we will not address this argument. However, considering the above, it is evident that there is a genuine dispute as to whether Chase supplied the information that led to Plaintiff's Date of Status allegedly being misrepresented. As such, we decline to grant summary judgment in Defendant's favor on this basis.

### iv. Defendant Has Not Cited to Any Legal Authority Standing for the Proposition that Information Appearing on a Consumer Disclosure is Not Actionable Under the FCRA

Defendant has also moved for summary judgment based on the proposition that the challenged information—namely, Plaintiff's Date of Status—solely appears on consumer

disclosures, which are not actionable under the FCRA.  (ECF No. 86 at 10-11.)  Defendant argues that Plaintiff's Second Amended Complaint inaccurately conflates credit reports, which are published to third parties, with consumer disclosures, which are issued directly to the consumer. (*Id.*)  Plaintiff, in response, avers that the case law that Defendant offers to support its argument is irrelevant.  (ECF No. 94 at 6-9.)  Plaintiff further asserts that (1) the Date of Status appears on both consumer credit reports and consumer disclosures; (2) the FCRA's protection "is not limited to information being reported on credit reports;" and (3) in our analysis here, the proper inquiry is not where Plaintiff's Date of Status appears, but rather "whether the incorrect Date of Status would have any effect on the Plaintiff."  (*Id.*)

We will not grant summary judgment on this basis as Defendant has not provided the Court with any relevant legal authority, binding or persuasive.  (*See* ECF No. 86.)  In arguing for summary judgment on this basis, Defendant only cites to one case.  (ECF No. 86 at 11 (citing *Fikes v. ARS Account Resolutions*, No. 18-220, 2019 U.S. Dist. LEXIS 43813, at *2-3 (E.D. Tex. Feb. 14, 2019)).)  This case does not, as Defendant claims, stand for the proposition that "Plaintiff's FCRA claim fails as a matter of law because it is premised solely on the notation that appears only in her consumer disclosure."  (ECF No. 86 at 11.)  Indeed, *Fikes* is merely the recommendation of a United States Magistrate Judge addressing the severance of claims.  *Fikes*, 2019 U.S. Dist. LEXIS 43813, at *11.  Moreover, the quotation that Defendant provides from *Fikes* does not address whether information on a consumer disclosure is actionable.  *Id*.  Plainly, the quotation concerns "[t]he action of a consumer checking their own credit score and credit history [which] is considered a consumer's credit 'file.'"  *Id.*, at *3 n.1.  This case does not address information on consumer disclosures, their actionability, or the duties of furnishers.

In its reply to Plaintiff's response, Defendant reiterates this argument and cites to another out-of-Circuit opinion that does not stand for the desired proposition.  (ECF No. 101 at 5-7 (citing *Giacolone v. Experian PLC*, No. 12-1192, 2013 U.S. Dist. LEXIS 87909, at *4-5 (N.D. Ill. June 24, 2013)).)  Defendant offers *Giacolone* for the proposition that "[i]nformation reported on consumer disclosures is not actionable under the FCRA."  (ECF No. 101 at 5.)  First, contrary to Defendant's claim, the court in *Giacolone* did not hold that information reported in a consumer disclosure cannot be the basis of an FCRA claim.  *Giacolone*, 2013 U.S. Dist. LEXIS 87909, at *4-6.

Indeed, the reason that the Court dismissed the plaintiff's FCRA claim in *Giacolone* was because plaintiff did not present "evidence of inaccurate information contained in a consumer credit report but instead has provided only the consumer disclosure sent to him as required by statute."  *Id*., at *6.  Accordingly, the Court's decision in *Giacolone* rested on the fact that the plaintiff had not provided the Court with any admissible evidence showing that "there exists a consumer credit report containing the inaccurate debt information . . ."  *Id*.  Moreover, *Giacolone* is otherwise easily distinguished as (1) it concerns a violation of FCRA Section 1681e(b), not at issue in the present matter; and (2) it addresses a claim against a CRA, not a furnisher.  *See id*.

Consequently, we find that Defendant has not provided this Court with any legal authority standing for the proposition that information appearing on a consumer disclosure (and alleged to ultimately impact a consumer's credit report and score) is not actionable under the FCRA.  We thus find that Defendant has not met its summary judgment burden as to this argument.

### v.  Plaintiff's Theory Does Not Fail as a Matter of Law

#### 1.  Plaintiff Has Sufficiently Alleged a Factual Dispute Actionable Under the FCRA

In its Motion, Defendant avers that "whether Chase had an obligation under the FCRA to report an account as disputed after performing an investigation of the dispute is a legal question that falls outside the parameters of the FCRA."  (ECF No. 86 at 14.)  It contends that, because of this, Plaintiffs claims fail as a matter of law as "furnishers are 'neither qualified nor obligated to resolve' matters that 'turn[] on questions that can only be resolved by a court of law.'"  (*Id*. (citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)).)  Defendant characterizes Plaintiff's Second Amended Complaint as merely disputing the legal treatment of her tradelines, solely making "the legal argument that Chase remained obligated under law to report her Chase Accounts as disputed simply because it received noticed of Plaintiff's dispute."  (*Id*. at 12.)

Plaintiff flatly rejects this argument.  (*See* ECF No. 94 at 9-13.)  In her response, she underscores that "[t]aking Chase's argument at face value, it would mean that since furnishers are unable to resolve legal questions, it should never mark an item as in dispute."  (*Id*.)  She further emphasizes that "[t]he case law is abundantly clear that any time a furnisher is made aware of a consumer's dispute, it must report the account with a dispute notation."  (*Id*.)

We agree.   Defendant  does  not  accurately  recount  the  factual  record,  and  its characterization of this dispute as a purely legal question is disingenuous.  First, Plaintiff maintains that "there is no indication that she no longer disputes the account because it remains incorrectly reported by Chase."  (*Id*. at 11.)  Second, Defendant allegedly failed to mark Plaintiff's Chase Accounts as "in dispute" after Plaintiff disputed them multiple times.  (*Id*.)  This case does not present a purely legal issue questioning the extent of furnishers' duties; it asks whether Defendant

complied with its obligations to Plaintiff under the FCRA.  Summary judgment is thus denied on this basis.

### 2. Adherence to Industry Guidelines Does Not Shield Defendant from FCRA Liability

Defendant notes that "[f]urnishers generally report their data to CRAs using an agreed-upon format, known as Metro 2 . . . . [and that these] requirements are specified in the Credit Reporting Resource Guide ('CRRG'), which is published by the Consumer Data Industry Association (CDIA), a CRA trade association."  (ECF No. 86 at 15 (citing *Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 752 (9th Cir. 2018)).)  It thus argues that it "cannot be found to have violated the FCRA for allegedly not reporting the Chase Accounts [as] in dispute . . . . [because] the seminal guide endorsed by the credit industry instructs furnishers <u>not</u> to report an account in dispute upon the receipt of a dispute from a CRA . . ."  (*Id.*)

In response, Plaintiff contends that "the CRRG is contrary to well-established law and cannot be used as a defense by the Defendant."  (ECF No. 94 at 14.)  Plaintiff further notes that "[t]he CRRG does not match the FCRA's statutory framework and is written by furnishers and credit reporting agencies, not duly elected representatives.  For this reason, numerous courts have declined to adopt the industry guidelines as the standard for a furnisher's duties under the FCRA."  (*Id.* (citations omitted).)

We agree with Plaintiff that Defendant may not use these guidelines as a defense here.  Notably, Defendant does not cite to any legal authority for the proposition that adherence to these industry guidelines shields it from FCRA liability.  (*See* ECF No. 86 at 15-16.)  Indeed, the relevant case law plainly runs counter to this argument.  *See, e.g.*, *Florence v. Cenlar Fed. S&L*, No. 16-587, 2018 U.S. Dist. LEXIS 34151, at *20 (D. Nev. Mar. 1, 2018) ("industry guidelines—such as

Metro 2—do not establish the standards for accuracy under the FCRA."); *Burrows v. Experian Info. Sols., Inc.*, No. 16-6356, 2017 U.S. Dist. LEXIS 39845, at *21-22 (N.D. Cal. Mar. 20, 2017) ("FCRA does not mandate compliance with Metro 2 or any other particular set of industry standards.").  As such, we decline to grant summary judgment in Defendant's favor on this basis.

### vi.  Plaintiff Has Provided Sufficient Evidence of Damages to Survive Summary Judgment

Defendant further argues that it is entitled to summary judgment as Plaintiff has suffered no damages in this matter.  (ECF No. 86 at 16-18.)  Defendant claims that "[i]n her deposition, Plaintiff conceded that she has not suffered any actual damages."  (*Id*. at 16.)  Particularly, Defendant underscores that Plaintiff has presented no evidence of what her credit score was during the relevant period and that Plaintiff "admitted that she did not check whether her credit score was lowered after her Experian consumer disclosure identified the alleged inaccurate 'Date of Status' for her Chase Accounts."  (*Id*.)  Additionally, Defendant emphasizes that since the allegedly incorrect Date of Status appeared, Plaintiff has not applied for and been denied credit, and, in fact, has obtained credit since then.  (*Id*.)  Notably, however, Defendant does not cite to a single case or statute in support of its argument.  (*See id*.)

In response, Plaintiff contends that she did suffer actual damages.  (ECF No. 94 at 16-18.) Plaintiff notes that emotional damages, losses to one's creditworthiness, and refraining from applying for credit are all contemplated under the FCRA.  (*Id*. at 16-17 (citing *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 214 n.8 (E.D. Pa. 2007); *Cook v. Mt. Am. Fed. Credit Union*, No. 18-1548, 2019 U.S. Dist. LEXIS 147154, at *26-27 (D. Ariz. Aug. 29, 2019); *Hillis v. Trans Union, LLC*, No. 13-2203, U.S. Dist. LEXIS 79840, at *13 (E.D. Pa. June 9, 2014); *Mund v. Transunion*, No. 18-6761, 2019 U.S. Dist. LEXIS 31289 (E.D.N.Y. Feb. 27, 2019)).)

Based on this and the relevant evidence, we find that Plaintiff has more than adequately alleged that she suffered damages as a result of Defendant's conduct.  First, in her answers to Defendant's interrogatories, Plaintiff recounted that she "experienced lost sleep, emotional distress, extreme personal embarrassment, the feeling of being trapped, and concern for the future."  (ECF No. 94, Ex. K.)  Second, Plaintiff has submitted testimony from her husband that further supports this assertion as well as the assertion that Plaintiff's credit score was lowered.  (*Id.* at 18.)  Third, as Plaintiff accurately argues, "[n]o case has held that a denial of credit is a prerequisite to recovery under the FCRA."  (*Id.* (quoting *Robbins v. CitiMortgage, Inc.*, No. 16-4732, 2017 U.S. Dist. LEXIS 201367, at *47 (N.D. Cal. Dec. 20, 2017) (citation omitted)).)  Fourth, although Defendant claims that "Plaintiff's own testimony belies her claim that she suffered any economic damages as a result of the 'Date of Status' reporting," this is plainly untrue.  (*See* ECF No. 86 at 17.)  To this point, Defendant quotes the following from Plaintiff's deposition:

> Q. What are you looking for Chase from this lawsuit?
>
> A. Damages.
>
> Q. And what are your damages?
>
> A. My damages would be that there was incorrect information on my credit report.
>
> Q. Are you able to monetize those damages?
>
> A. I don't know.
>
> Q. Are you able to tell me today what figure represents your damages, what monetary figure represents your damages?
>
> A. No. I personally can't tell you that.
>
> Q. Can you tell me how you were damaged?
>
> A. My rights were violated. Dates were changed on my credit report that were inaccurate.

Q. And can you tell me if the date of status as you allege being inaccurate, did that lead to —did that lead to you being damaged?

A. My rights were violated.

Q. Did you have any other type of damages? Can you point to a number and say Chase is responsible for X because of this?

A. No.

Q. Are you aware that your counsel, not Mr. Zemel, but Mr. Linker, represented to the Court that you don't have actual damages in this lawsuit?

A. No.

Q. Do you know the difference between actual damages and statutory damages?

A. No.

Q. If you were sitting right now before the judge and the judge asked you, what are your actual damages, could you quantify that for me, what would you say?

A. I would say I don't know.

(ECF No. 86, Ex. J at 58:6-24; 59:1-24; 60:1-4.)

This portion of Plaintiff's deposition transcript does not stand for the proposition that Plaintiff suffered no damages. Rather, it stands for the proposition that non-lawyers will often not know how to provide conclusions as to legal terms. Plaintiff, who is not an attorney, cannot be expected to calculate damages or distinguish between categories of damages when deposed.

At minimum, there is a genuine dispute as to whether Plaintiff suffered damages here. As such, we will deny Defendant summary judgment based on this argument.

### vii.  A Reasonable Jury Could Find That Plaintiff is Entitled to Punitive Damages

Lastly, Defendant argues that Plaintiff has not, and cannot, demonstrate any claim for punitive damages. (ECF No. 86 at 20-11.) Defendant maintains that nothing in the record supports

finding that it willfully violated the FCRA. (*Id*.) In response, Plaintiff contends that, at minimum, "questions of fact remain concerning whether Defendant willfully failed to mark the account as in dispute, as well as whether Defendant willfully failed to conduct a reasonable investigation." (ECF No. 94 at 19.) Plaintiff further argues that Defendant's blanket policies not to mark indirect disputes as "in dispute" represents an "outright conflict" with its FCRA duties, and therefore constitute a willful violation of the statute. (*Id*. at 20.)

Section 1681n of the FCRA provides that "any person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . . such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n(a)(1)(2). To sustain a claim for punitive damages in the Third Circuit, "a defendant's actions must be on the same order as willful concealments or misrepresentations." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir. 1997). Additionally, "[l]iability for willful violations will lie not only in the case of knowing violations of the statute but also if a defendant acts with 'reckless disregard' of the statute's terms." *Seamans*, 744 F.3d 853, 868 (3d Cir. 2014) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)). An entity subject to FCRA liability will not be found to have acted with "reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69.

Plaintiff need not show that Defendant acted with malice or an evil motive. *Cushman*, 115 F.3d at 227 (citations and internal quotations omitted). Additionally, for the purposes of Section 1681n(a), evidence of a defendant's subjective bad faith or intent is irrelevant as to willfulness

28

where there is an objectively reasonable interpretation of the FCRA permitting the conduct.  *Long v. Tommy Hilfiger U.S.A.*, 671 F.3d 371, 377-78 (3d Cir. 2012) (citing *Safeco*, 551 U.S. at 69-70).

Considering the present summary judgment record, we find that Defendant has not met its burden and that factual inquiries remain for the jury.  A reasonable jury could find that Defendant's policy to not mark any indirect disputes as "in dispute" constitutes a knowing or reckless infringement upon consumers' rights.  *See Cushman*, 115 F.3d at 227 ("[i]f [Plaintiff] can prove . . . . that TUC adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights, she may be awarded punitive damages.").  Accordingly, we find it inappropriate to grant summary judgment in Defendant's favor as to Plaintiff's punitive damages claim.

## IV.    CONCLUSION

For the above-detailed reasons, we deny both Plaintiff's and Defendant's Motions for Summary Judgment.  (*See* ECF Nos. 84, 86.)  An appropriate Order follows.